# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRYAN A. THOMAS, SR.,

        Petitioner,                          Case Number: 06-CV-13707

v.                                              HON. JOHN CORBETT O'MEARA

C. EICHENLAUB,

        Respondent.
_____/

## OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case filed under 28 U.S.C. § 2241. Petitioner Bryan A. Thomas, Sr., a federal prisoner incarcerated at the Federal Correctional Institution in Milan, Michigan, is proceeding *pro se*. Petitioner challenges the policies of the Federal Bureau of Prisons (BOP) concerning his eligibility for placement in a Community Corrections Center ("CCC"), also known as a Residential Reentry Center (RCC). The Court determines that the policy and regulations at issue are invalid and, therefore, grants the petition.

### II. Procedural History

Petitioner pleaded guilty in the United States District Court for the Eastern District of Louisiana to wire fraud and money laundering. On July 18, 2001, he was sentenced to a 97-month term of imprisonment and three years' supervised release. He currently has a projected release date of August 22, 2008.

On August 11, 2006, Petitioner requested consideration for placement in a CCC. Respondent denied Petitioner's request, stating that Petitioner would be eligible for RRC

placement on February 22, 2008. Petitioner appealed the warden's decision. The Regional Director for the Bureau of Prisons stated that placement in an RRC would be possible only during the last ten percent of Petitioner's sentence, and that such placement could not exceed six months. Petitioner provides documents showing that he appealed the Regional Director's decision to the Central Office for Administrative Appeals. It is unclear from the record before the Court whether that final appeal was ever adjudicated.

Petitioner has filed a habeas petition seeking an order invalidating the BOP's regulations concerning CCC placement.

### III. Analysis

### A.

Respondent first argues that Petitioner's claims are not properly filed under 28 U.S.C. § 2241. Respondent characterizes Petitioner's claims as challenging the conditions of his confinement rather than the fact or validity of his confinement or the duration of his confinement. Thus, Respondent concludes, § 2241 relief is unavailable to Petitioner because § 2241 relief is limited to challenges to the legality or duration of a prisoner's confinement.

The Sixth Circuit has held that § 2241 is the appropriate remedy for a prisoner challenging the execution of his sentence. United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991). In Jalili, the Sixth Circuit addressed a federal prisoner's claim that arose when the BOP threatened to transfer the prisoner from a CCC to a more secure facility. The Sixth Circuit held that the prisoner properly sought relief under § 2241 because "the manner in which the sentence was being executed" was challenged. Id.

Similarly, numerous Courts of Appeals and District Courts from other jurisdictions have

found that prisoners challenging the BOP's application of § 3621(b) may do so under § 2241. *See* Levine, 455 F.3d at 77-78; Woodall, 432 F.3d at 242-43; Muniz v. Winn, 462 F. Supp. 2d 175 (D. Mass. 2006); Rivera v. Attorney General of United States, No. 4:06-cv-2154, 2006 WL 3343655, *1-2 (N.D. Ohio Nov. 17, 2006); Chan v. Smith, No. 06-1028, 2006 WL 3251800, *1 (E.D. Cal. Nov. 8, 2006).

The Court finds that Petitioner's challenge to the BOP's failure to consider him for CCC placement is a challenge to the manner in which his sentence is being executed and, therefore, is properly filed under 28 U.S.C. § 2241.

**B.**

A federal habeas corpus petitioner must exhaust administrative remedies before seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Little v. Hopkins, 638 F.2d 953, 954 (6th Cir. 1981). *See also* Graham v. Snyder, 68 Fed. Appx. 589, 590-91 (6th Cir. 2003). The exhaustion requirement supports the general principle that "the Bureau of Prisons should be given the opportunity to consider the application of its policy to [petitioner's] claim before the matter is litigated in the federal courts." Urbina v. Thoms, 270 F.3d 292, 295 n.1 (6th Cir. 2001) (internal quotation omitted). The petitioner bears the burden of establishing exhaustion. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

The Bureau of Prisons provides administrative remedies pursuant to which a federal prisoner may "seek formal review of an issue relating to any aspect of his/her own confinement." *See* 28 C.F.R. §§ 542.10 (1998). First, a complaining prisoner must submit his complaint to the institutional staff. If the staff is unable to resolve his complaint, the prisoner may file a formal request for administrative remedy with the prison warden. 28 C.F.R. § 542.14. If the prisoner is

dissatisfied with the response, he may then appeal to the Regional Director and, if still unsatisfied, to the General Counsel in the Central Office. 28 C.F.R. § 542.15.

Respondent argues that Petitioner's claims are not properly exhausted because Petitioner did not file an appeal with the General Counsel in the Central Office. In fact, Petitioner provides a copy of his Central Office Administrative Remedy Appeal, dated 10/26/06, and a copy of the acknowledgment of receipt by the Central Office of his appeal. Therefore, the Court finds that Petitioner has exhausted his administrative remedies.

## C.

Two statutes form the basis for the BOP's authority to designate the place of confinement of federal prisoners. The first, 18 U.S.C. § 3621(b), states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence –
>
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> >
> > (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

The second relevant statute, 18 U.S.C. § 3624(c), charges the BOP with facilitating a prisoner's reentry into society. It states, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Prior to December 2002, the BOP allowed prisoners to be placed "'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." Levine v. Apker, 455 F.3d 71, 75 (2d Cir. 2006) (*quoting* U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)). In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's policy of placing offenders in CCCs for all or a significant portion of their sentences. United States v. Sherpa, 251 F. Supp. 2d 988, 990 (D. Mass. 2003) (internal quotation omitted). The 2002 memorandum concluded that § 3621 did not confer general authority on the BOP to place an offender in a CCC at any time or for any period of time. Instead, the memorandum concluded that the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limits the time an offender may be placed in a CCC to the lesser of six months or ten percent of the offender's sentence. *See* Woodall v. Bureau of Prisons, 432

F.3d 235, 240 (3d Cir. 2005). On December 20, 2002, the BOP adopted a new policy reflecting the Office of Legal Counsel's position that inmates may only be released to community confinement for the last ten percent of their terms of imprisonment or six months, whichever is shorter. *See* id.

Shortly after the BOP's adoption of this new policy in December 2002, offenders nationwide filed a flurry of lawsuits challenging its validity. The First and Eighth Circuit Courts of Appeals found this 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a CCC, restricting transfer only to the last 10 % of an offender's sentence or six months, in contravention of the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

In response to these decisions, the BOP adopted new rules regulating CCC placement, effective February 14, 2005.[1] The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations categorically deny CCC placement to any inmate not in the lesser of the last 10 % or six months of his sentence, except under certain limited, enumerated circumstances:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison

---

[1] The United States District Court for the District of Massachusetts aptly described the 2005 rules as follows: "[T]he BOP adopted a set of rules in January, 2005 adopting much the same policy [as that expressed in the 2002 rules] but anchoring it to a different theory." Muniz v. Winn, 462 F. Supp. 2d 175 (D. Mass. 2006).

sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

28 C.F.R. §§ 570.21.

Petitioner challenges the validity of the 2005 regulations. The Court of Appeals for the Sixth Circuit has yet to address the validity of these regulations. However, this Court and three other judges in this district have recently held the BOP's policy of categorically excluding placement in community confinement until the last ten percent or six months of their sentence is contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering placement in a CCC. See Luckett v. Eichenlaub, No. 07-10118, 2007 WL 3124666 (E.D. Mich. Oct. 24, 2007); Halter v. Eichenlaub, No. 07-11072, 2007 WL 2873944 (E.D. Mich. Sept. 25, 2007); Weirup v. Eichenlaub, No. 07-10672, 2007 WL 2300715 (E.D. Mich. Aug. 7, 2007); Holloway v. Marberry, No. 06-12516, 2007 WL 1880386 (E.D. Mich. June 27, 2007). In all of these cases, the district judges surveyed cases from other jurisdictions and found that four federal appellate courts have found the regulations in question to be invalid.[2] The district court's analysis in Holloway carefully sets forth the basis for its finding that the regulations are invalid and bears repeating:

> An agency's interpretation of a statute ordinarily is entitled to deference. Chevron v. Nat'l Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, when reviewing an agency's interpretation of a statute, courts must first ask "whether Congress has directly spoken to the precise

---

[2] See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir.2007); Levine v. Apker, 455 F.3d 71 (2d Cir.2006); Fultz v. Sanders, 442 F.3d 1088 (8th Cir.2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir.2005).

7

question at issue." Id. at 842. If Congress has not directly addressed the issue or if the statute is silent or ambiguous on a specific issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

The intent of 18 U.S.C. § 3621(b) is clear. It requires the Bureau of Prisons to consider five factors when designating a prisoner's place of imprisonment. Because Congress' intent is clear from a reading § 3621(b), "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. There is no need to defer to the agency's interpretation in light of the clear and unambiguous language of § 3621(b). Fults, 442 F.3d at 1090; Wedelstedt v. Wiley, 477 F.3d 1160, 1167 (10th Cir.2007).

Even if the Court were to assume that the statute is ambiguous, the regulations in question are not based on a permissible construction, because they take a categorical approach to placement of prisoners and do not allow for consideration of the five factors set forth in 18 U.S.C. § 3621(b). Woodall, 432 F.3d at 249. Thus, the regulations are invalid. Wedelstedt, 477 F.3d at 1165 (concluding that 28 C.F.R. §§ 570.20 and 570.21 "impermissibly conflict with the clear and unambiguous congressional intent articulated in 18 U.S.C. § 3621(b) and are, therefore invalid"); Levine, 455 F.3d at 87 (holding that, "in transferring an inmate to a CCC or any 'available penal or correctional facility,' the [Bureau of Prisons] must consider the factors set forth in § 3621(b), without reference to 28 C.F.R. § 570.21"); Fults, 442 F.3d at 1092 (stating that the Bureau's regulation conflicts with 18 U.S.C. § 3621(b) and is invalid); Woodall, 432 F.3d at 237 and 244 (concluding that the 2005 regulations, which categorically limit the amount of time an inmate may be placed in a CCC, are unlawful because they do not allow the Bureau to consider the five factors in § 3621(b)).

The grammatical construction of 18 U.S.C. § 3621(b) compels the conclusion that the Bureau must "be informed by the list of five Congressional concerns." Levine, 455 F.3d at 81; accord Fults, 442 F.3d at 1091-92; Woodall, 432 F.3d at 245. The legislative history also supports a reading that consideration of the five factors in 18 U.S.C. § 3621(b) is mandatory. Levine, 455 F.3d at 82; Woodall, 432 F.3d at 245-46. In fact, a Senate Judiciary Committee report "disavows any restriction on the [Bureau's] exercise of discretion...." Levine, 455 F.3d at 82.

. . .

Furthermore, while 18 U.S.C. §§ 3621(b) and 3624(c) may appear to contradict each other,

> [t]he statutory command in § 3621(b) stands alone as a clear and unambiguous articulation of congressional intent regarding the

> process by which the BOP should make placement and transfer determinations. *Accord* Levine, 455 F.3d at 82; Woodall, 432 F.3d at 246. Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration. *See* Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 (10th Cir.1992) (interpreting § 3624(c) as imposing a mandatory obligation on the BOP to facilitate a prisoner's pre-release transition, but explicitly stating § 3624(c) does not affect the agency's discretion in determining an individual prisoner's place of imprisonment prior to the pre-release period); *accord* Woodall, 432 F.3d at 250 ("[Section] 3624[ (c) ] does not determine when the BOP should consider CCC placement, but when it must provide it."); Elwood, 386 F.3d at 847 ("Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP must formulate a plan of pre-release conditions." (emphasis added)); Goldings v. Winn, 383 F.3d 17, 26 (1st Cir.2004) (same).... [Section] 3624(c) has no bearing on whether §§ 570.20 and 570.21 are consistent with the § 3621(b) statutory scheme for BOP placement and transfer determinations.
>
> Wedelstedt, 477 F.3d at1166 (alterations in original with the exception of the full name and citation for Prow).

Holloway, 2007 WL 1880386 at *4-6.

This Court again finds that the BOP regulations § § 570.20 and 570.21 conflict with the clear intent of 18 U.S.C. § 3621(b), and, therefore, are invalid.

## IV. Conclusion

Accordingly, the petition is **GRANTED**. The BOP is directed to consider within **THIRTY DAYS** from the date of this Order whether Petitioner is eligible for transfer to a CCC. The BOP is not required to place Petitioner in a CCC for more than the last six months or ten percent of his sentence, but it must at least consider in good faith the factors in 18 U.S.C. § 3621(b) without regard to 28 C.F.R. §§ 570.20 and 570.21.

**SO ORDERED**.

s/John Corbett O'Meara<br>United States District Judge

Date: December 27, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 27, 2007, by electronic and/or ordinary mail.

sWilliam Barkholz<br>Case Manager